CANISTER CO. v. WOOD & SELICK, Inc.*
No. 5266.

Circuit Court of Appeals, Third Circuit.
Aug. 28, 1934.

Rehearing Denied Dec. 3, 1934.

*Rehearing denied — F.(2d) —.

Walter S. Keown, of Camden, N. J., and Warwick Potter Scott, of Philadelphia, Pa. (Frederic L. Ballard and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., of counsel), for appellant.

Walter L. McDermott, of Jersey City, N. J., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court entered upon a motion of defendant to strike out the amended reply of the plaintiff on the ground that its pleadings were insufficient in law to constitute a cause of action.

This action arose out of an alleged contract between the parties contained in the following letter written to the Canister Company, hereinafter called plaintiff, by Wood & Selick, Inc., defendant:

"New York, March 29th, 1928.
"The Canister Company,
"Phillipsburg, New Jersey.
"Gentlemen:

"We have concluded to enter into the following agreement with you and you will please signify your acceptance at the foot of this letter.

"The plant which we are now operating at West New Brighton, S. I., is to be dismantled and all of the equipment therein, including shafting, patterns, etc., is to be sent to you at Phillipsburg, N. J. as soon as possible after the acceptance by you of this agreement.

"The equipment is to be properly crated by us and shipped F. O. B. your siding at Phillipsburg, freight charges to be paid by you, and the ownership is to remain vested in us for a period of two years, at which time it is to be bought by you at a price to be agreed upon by both parties, that is, if no prior notice of an intention to cancel the agreement has been served by either party upon the other. In the event the contract is to be cancelled or that our minds cannot meet upon a price for the equipment, you agree to use your best efforts to sell the equipment for us as our agents.

"The equipment is to be protected by insurance during the trial period; carried in our name; premiums to be paid by you.

"The agreement is to run for a period of five years, cancellable however, after two years upon three months written notice by either party upon the other.

"It is agreed that you will devote the necessary space to a new Department, which you are to set up, and that you will train an organization to carry it on, and that you will sell the output of that Department thru no other source than Wood & Selick, Inc. We in turn agree not to buy from anyone other than yourselves utensils such as we have been manufacturing in the Staten Island Plant. We shall also have the right to sell any other product which you may manufacture.

"We agree herewith to buy from you within one year from the date of this agreement, after first allowing a period of thirty days for the installation of equipment, etc., merchandise in the amount of $70,000.00, figured on your cost, that is, materials, labor and overhead as you figure it.

"We are to act as your sole sales agent, and it is understood between the parties that we are to offer *your product for sale at prices to be mutually agreed upon and that there is to be an equal division between the parties herein of the difference between your total cost*, as you now figure it, to manufacture, (that is, materials, labor and overhead), and the sales price.

"The raw materials in our possession and amounting approximately to $5500.00 will be shipped to you and invoiced as of starting date, 30 days from date of this agreement on terms of one-half three months, one-half six months, with the understanding however that prices must compare favorably with present quotations and that quality must be satisfactory.

"All goods wherever shipped by you on our instructions are to be charged to us at the regular terms of your Company.

"You are to manufacture or assemble, or both, anything which we may become interested in in the future, as for example the Frankfurter Roasting Machine, which we are now developing in association with Adolf Gobel, Inc.

"We will place with you, simultaneously with the signing of this agreement, a stock order for articles which we have heretofore been manufacturing; the exact amount to be determined within a few days after we have had the opportunity of consulting our Inventory Sheets. This stock order will cover a period of one year and 50% of it will be

requisitioned from you within a period of six months.

"Very truly yours,
"Wood & Selick, Inc.,
"By David A. Kay, V. P.
"Accepted
"The Canister Co.
"R. T. Garfein, Pres.
"Dated March 30, 1928
"Phillipsburg, N. J."

The plaintiff alleged and pleaded in addition certain oral agreements which it called "interpretive," but these offend against the statute and in the end plaintiff relies, as it must, upon the above letter.

■ The question before the District Court and before us is whether or not the letter sets forth an enforceable contract in view of the statute of frauds of New Jersey (2 Comp. St. N. J. 1910, p. 2612, § 5).

This contract embraced two enterprises: 1. The plaintiff was to manufacture such utensils as defendant had been manufacturing in its plant at West New Brighton, Staten Island, N. Y., and in order to do that the plant at West New Brighton was to be dismantled and all the equipment shipped to Phillipsburg, N. J., to the plaintiff which in order to carry out its part of the contract was to pay the freight on the equipment, install the plant, set up a new department, and "train an organization to carry it on." All this was done. The defendant was to buy from the plaintiff within one year from the date of the agreement, after first allowing thirty days for the installation of the equipment, the merchandise thus manufactured in the amount of $70,000.00 "figured on your (plaintiff's) cost, that is, materials, labor and overhead as you figure it."

This part of the contract was clear and definite and was separate and distinct from the other part. The defendant was "to buy" the merchandise embraced in this part of the contract on stipulated terms. This merchandise thereafter belonged to defendant to do with as it pleased. As to the other merchandise which defendant did not "buy," and which remained "your (plaintiff's) product," defendant was to be plaintiff's "sole sales agent" and was to offer it for sale "at prices to be mutually agreed upon" in the future as distinguished from the merchandise which defendant bought. This part of the contract relating to the merchandise which defendant was to "buy" within one year on terms stated therein "in its nature and purpose is susceptible of division" from the other part of the contract. In the case of Lucesco Oil Co.

v. Brewer, 66 Pa. 351, 354, the Supreme Court of Pennsylvania said: "If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * But if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items."

In the case of Traiman v. Rappaport, 41 F.(2d) 336, 338, 71 A. L. R. 475, we said: "The Statute of Frauds affects the contract in suit according as it may be an entire or a separable contract under familiar law that if a part of an oral contract, falling within the scope of the statute, is in violation of the statute, the whole contract, if it is entire and indivisible, is within the statute and unenforcible; but if the contract is divisible, that part of it which is not within the scope of the statute may be enforced. 27 C. J. 318. Whether a contract is entire or divisible depends very largely on its terms and on the intention of the parties disclosed by its terms. As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. 13 C. J. 561. Aside from the terms of the contract and intention of the parties a test of severability is that if the consideration is single the contract is entire but if the consideration is expressly or by implication apportioned, the contract may be, yet even then need not necessarily be, regarded as severable. 13 C. J. 561, 562, 563."

Both parties apparently entered into the contract in entire good faith, and the plaintiff at considerable expense made preparations to carry out and, so far as it could, did carry out its part of the agreement. Accordingly, it is entitled to recover for the damages for the first year which it suffered on account of the failure and refusal of the defendant to carry out this part of its agreement.

■ 2. The other part of the agreement provided as above stated for the sale of the manufactured "product" "at prices to be mutually agreed upon" and for the division of the profits.

It is contended that this provision, "at prices to be mutually agreed upon," renders the contract illegal and unenforceable under the statute of frauds of New Jersey, which provides that: "No action shall be brought * : * upon any agreement, that is not to be performed within one year from the making thereof; unless the agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized." 2 Comp. St. New Jersey, 1910, p. 2612, § 5.

The part of the contract which offends against the statute of frauds is the provision that defendant was to offer the plaintiff's product of manufacture "for sale at prices to be mutually agreed upon" at some future time when they were ready to sell. As the District Court observed, a price subsequently to be fixed by mutual agreement of the parties was not in writing and was not signed by the parties, it was nothing more than an agreement to agree. The price was a material element of this portion of the contract and was left for future negotiations. It was, therefore, not in existence, was not in writing, and was not signed by the party to be charged therewith, as required by the statute of frauds. Shaw v. Woodbury Glass-Works, 52 N. J. Law, 7, 18 A. 696; Tansey v. Suckoneck, 98 N. J. Eq. 669, 130 A. 528; Sun Printing & Publishing Association v. Remington Paper & Power Co., Inc., 235 N. Y. 338, 139 N. E. 470.

It follows that the judgment must be reversed in part and affirmed in part, and a new trial awarded.