## MORRIS PLAN INDUSTRIAL BANK OF NEW YORK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1945.

Donald Horne, of New York City (Henry W. Parker, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Harry Baum, all of Washington, D. C., for respondent.

Before L. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. We cannot agree that the pending suit in the district court deprived the Commissioner of his statutory authority to issue a deficiency notice or rendered that notice legally inefficacious. The suit was not what is commonly called "in rem" or "quasi in rem," and therefore could not operate to prevent him from exercising his statutory powers. Perhaps had there been a judgment in the district court, it would have been res judicata; but there has been no such judgment. Since the district court action was in personam, it could not, at least before entry of a judgment therein, affect the Commissioner's authority.[1]

2. On the merits, we see nothing to taxpayer's contentions. It had, we think, plainly elected in 1921 to use the reserve method with respect to its so-called "industrial" loans.

Since 1921, the taxpayer had never in its tax returns, before the tax years herein question, claimed any deduction from its gross income for any actual specific "industrial" loans ascertained to be worth-

---

[1] It is to be noted that the suit in the district court was not against the United States but against the Collector; consequently, there might perhaps be a question whether, even if a judgment had been entered therein it would have been res judicata against the Commissioner. See United States v. Nunnally Investment Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455, 140 A.L.R. 792. As the suit was begun before June 15, 1942, the amendment in 1942 to § 3772(d), 26 U.S.C.A. Int.Rev. Code, would not have been applicable.

less. It had merely, in making its calculations of the additions to the reserve as reported in its returns—which additions it did in those returns deduct from gross income—taken into account such loans actually ascertained to be worthless. Thus, before 1938, taxpayer adhered to the reserve method. This conduct constituted an election. The applicable regulation provides, "The method used in the return for 1921 must be used in returns for all subsequent years unless permission is granted by the Commissioner to change to the other method". We think that provision valid. No such permission has ever been granted.

Taxpayer asserts that its own accounting methods used in computing its additions to its reserve before 1938 were erroneous, and that, therefore, taxpayer cannot be said to have made an election. But whether its accounting techniques were in some manner mistaken, we need not consider; for undoubtedly in its returns taxpayer utilized, with respect to "industrial" loans, the reserve alternative and is bound by it. The taxpayer itself segregated its "industrial" from its "commercial" loans, applying the method of specific actual bad debt deductions solely to the latter. It now maintains that the same method must be applied to all its loans, and that, as the Commissioner has allowed its specific deductions as to bad debt "commercial" loans, the Commissioner and the Tax Court erred in finding that taxpayer elected the reserve method as to its other loans. We do not agree. Perhaps the Commissioner erred in approving the segregation and in allowing the specific deductions in the case of the "commercial" loans; but, if so, he has not complained, and taxpayer cannot. Whether or not the segregation was proper, there can be no doubt of the election with respect to the "industrial" loans.

If there could be any doubt as to the fact of such election, it was resolved by the Tax Court's decision that it occurred. For that decision did not turn on a "clearcut question of law" but on one of "mixed law and fact," and the decision did not involve "a rule of general applicability." Bingham's Trust v. Commissioner, 65 S.Ct. 1232, 1235.

3. The sole issue, then, is whether we should reverse the Commissioner's determination that the reserve, in each of the tax years here in question, was so ample that no addition to the reserve could reasonably be made. The statute confers on him discretion to make such a determination. We cannot reverse his action unless it appears that he abused that discretion. Even without the Tax Court's decision, we would be strongly inclined to sustain him, since taxpayer's actual loss experience indicates clearly that the reserve in each of those years was wholly sufficient without any additions. But we need not decide that issue. The Tax Court has found that the Commissioner acted reasonably. We think such a finding is the kind which we may not disturb if there is substantial evidence to support it. Bingham v. Commissioner, supra. Plainly there is here such substantial evidence, no matter how the reserve is analyzed.[2]

Affirmed.

---

[2] For that reason we need not consider the correctness of the precise methods of analysis used by the Commissioner and by the Tax Court in arriving at their respective conclusions.